**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Nirosh H. De Silva, | ) | No. CV 24-00200-TUC-MAA |
| Plaintiff, | ) | ORDER |
| vs. | ) | |
| Pima County Government, a political subdivision/governmental entity; et al., | ) | |
| Defendants. | ) | |

Pending before the court is the defendants' partial motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed on June 26, 2024. Doc. 29. The plaintiff, Nirosh H. De Silva, filed a response on August 9, 2024. Doc. 44. The defendants filed a reply on August 21, 2024. Doc. 49. De Silva filed a supplemental response on October 17, 2024. Doc. 63.

The Magistrate Judge presides over this action in accordance with 28 U.S.C. § 636(c) pursuant to the consent of all parties. Doc. 13.

The plaintiff, Nirosh H. De Silva, worked as a Buyer Senior in the Pima County Procurement Department. Second Amended Complaint, Doc. 28, p. 5. He applied for a promotion to the position of Buyer Principal, but his application was denied. Doc. 28, pp. 5-20. He subsequently applied for the positions of Procurement Officer; Business Intelligence Analyst - Senior; and Technical Writer, Business Systems Analyst, but each time, his application was denied. Doc. 28, pp. 5-20. In his Second Amended Complaint, De

1  Silva asserts a cause of action for defamation per se, employment discrimination, retaliation,

2  federal civil rights violations, negligence, and negligence per se.  Doc. 28, pp. 20-64.

3      On June 26, 2024, the defendants filed the pending motion to partially dismiss

4  pursuant to Fed.R.Civ.P. 12(b)(6).  Doc. 29. They move that this court dismiss all claims

5  except the claims regarding De Silva's application for the Buyer Principal position.  The

6  motion will be granted in part.

7

8  <u>Discussion</u>

9      "A Rule 12(b)(6) motion tests the legal sufficiency of the claim."  *Cook v. Brewer*,

10  637 F.3d 1002, 1004 (9th Cir. 2011).  The claim must allege a legally cognizable theory of

11  relief and include factual allegations sufficient to support that theory.  *Hinds Investments,*

12  *L.P. v. Angioli*,  654 F.3d 846, 850 (9th Cir. 2011).

13      'A complaint must give "a short and plain statement of the claim showing that the

14  pleader is entitled to relief."  *Doe, Nos. 1-9 v. Wynn Resorts Ltd.*, 2021 WL 5492971, at *1

15  (9th Cir. Nov. 23, 2021) (quoting Fed. R. Civ. P. 8(a)(2)). "The pleading standard Rule 8

16  announces does not require detailed factual allegations, but it demands more than an

17  unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*.

18      To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right

19  to relief above the speculative level . . . on the assumption that all the allegations in the

20  complaint are true even if doubtful in fact."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

21  555,  127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted).  "[A] well-pleaded

22  complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

23  improbable, and that a recovery is very remote and unlikely."  *Id.* at 556, 1965 (internal

24  punctuation omitted).

25      This court will "take as true all plausible allegations" as stated in the complaint.  *In*

26  *re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 315 (9th Cir. 2017), *aff'd sub nom. Apple Inc.*

27  *v. Pepper*, 587 U.S. 273, 139 S. Ct. 1514 (2019).

28

Waiver

As a preliminary matter, De Silva asserts that this court cannot entertain the pending motion as it relates to the unlawful discrimination and retaliation claims pursuant to Fed.R.Civ.P. 12(g)(2). Doc. 44, p. 9. This Rule states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). In other words, De Silva argues that the defendants have waived their right to raise these issues now by failing to raise them in a prior motion to dismiss.

De Silva filed his original Complaint in Pima County Superior Court. Doc. 44, p. 2. The defendants subsequently filed a motion to dismiss pursuant to Ariz.R.Civ.P. 12(b)(6). Doc. 44, p. 2. De Silva then filed his First Amended Complaint adding additional claims. Doc. 44, p. 2.

The action was then removed to this court. Doc. 44, pp. 2-3. The defendants subsequently filed their second motion to dismiss. Doc. 44, p. 3. On June 12, 2024, De Silva filed his Second Amended Complaint with the court's permission, which included additional details but did not assert additional claims. Doc. 44, p. 3. On June 26, 2024, the defendants filed the pending motion to dismiss, which is their third. Doc. 44, p. 3.

De Silva maintains that the current complaint, the Second Amended Complaint, contains the same factual allegations found in the initial Complaint, and the defendants could have raised their pending arguments related to the unlawful discrimination and retaliation claims in their original motion to dismiss. *Id*. Because they failed to do so, he argues, they are precluded from raising those arguments now pursuant to Rule 12(g)(2). The court does not agree. *See also* Fed.R.Civ.P. 1.

The court notes that none of the defendants' prior motions to dismiss were addressed on the merits. The parties do not discuss whether this fact is relevant. The court assumes without deciding that it is not. *But see* Advisory Committee Notes to Rule 12(g), 1996 Amendment ("This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case."). The parties assume

without further discussion that the phrase "defense or objection" in Rule 12(g)(2) applies to that part of motion to dismiss directed at *a particular claim*. The court assumes without deciding that they are correct. *But see* Fed.R.Civ.P. 12(h)(1).

Rule 12(h)(1) explains that Rule 12(g)(2) and its "waiver" rule applies with full force to a defense listed in Rule 12(b)(2)-(5), lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process. Fed.R.Civ.P. A defense listed in Rule 12(b)(2)-(5) is waived if it is not brought in an earlier Rule 12 motion. Fed.R.Civ.P. 12(h)(1)(A). Waiver does not strictly apply, however, to the defense of failure to state a claim upon which relief can be granted, Rule 12(b)(6). Fed.R.Civ.P. 12(h)(2). If a Rule 12(b)(6) argument is omitted from a prior Rule 12 motion, it may be brought later, either in the answer, in a Rule 12(c) motion, or even at trial. *Id*. Perhaps for this reason, the Ninth Circuit has held that the court may entertain a second or successive Rule 12(b)(6) motion provided there is no evidence of bad faith on the part of the movant and doing so would "expedite[] the district court's disposition of the case." *In re Apple iPhone Antitrust Litig*., 846 F.3d 313, 320 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273, 139 S. Ct. 1514, 203 L. Ed. 2d 802 (2019). Such is the case here. This court finds no evidence of bad faith and concludes that entertaining the entirely of the defendants' Rule 12(b)(6) motion at this time would save time and resources for the parties and the court. In the alternative the court could construe the pending motion as a Rule 12(c) motion, which would be a distinction without a difference.

In his supplemental response, De Silva maintains that the defendants' decision to add additional arguments in their pending Rule 12(b)(6) motion was "made for a strategically abusive purpose and delay." Doc. 63, p. 2. He accuses them of "attempting to overwhelm Plaintiff with piecemeal motions and cause delay." *Id*. He asserts that "[t]here is nothing in the record that demonstrates the Defendants could not have raised all issues pertaining to the discrimination and retaliation counts in the first Rule 12(b) motion." Doc. 63, p. 2. De Silva seems to be arguing that the defendants intentionally withheld arguments from their first Rule 12(b)(6) motion in order to sandbag him later in the litigation. But this theory only makes

1  sense if, when the defendants filed their first Rule 12(b)(6) motion, they knew that they

2  would have another bite at the apple when De Silva filed his first amended complaint.  There

3  is no evidence that the defendants possessed this kind of foresight, and no evidence of abuse.

4

5        Outside Documents

6        De Silva further argues that this motion should be treated as a motion for summary

7  judgment because the defendants rely on two documents that are not contained within the

8  four corners of the Second Amended Complaint – the Notice of Claim against Marsha Kelly

9  and Pima County's internal administrative review report.  Doc. 44, pp. 9-10.

10        "Generally, district courts may not consider material outside the pleadings when

11  assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil

12  Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  "When

13  matters outside the pleading are presented to and not excluded by the court, the 12(b)(6)

14  motion converts into a motion for summary judgment under Rule 56."  *Id*.   (punctuation

15  modified).  "Then, both parties must have the opportunity to present all the material that is

16  pertinent to the motion."  *Id*.

17        On the other hand, "a court may take judicial notice of matters of public record

18  without converting a motion to dismiss into a motion for summary judgment."  *Id*. at 999.

19  Moreover, under the "incorporation-by-reference" exception, "a defendant may seek to

20  incorporate a document into the complaint if the plaintiff refers extensively to the document

21  or the document forms the basis of the plaintiff's claim." *Id*. at 1002 (punctuation modified).

22  The Ninth Circuit cautions, however, that "the mere mention of the existence of a document

23  is insufficient to incorporate the contents of a document."  *Id*.

24        This court's analysis of the pending motion does not rely on the contents of the Notice

25  of Claim.  *See infra*.  Neither does it rely on the contents of the administrative review report

26  except to the extent that De Silva references those contents in his Second Amended

27  Complaint.  *Id*.  Accordingly, this motion to dismiss will not be treated as a motion for

28  summary judgment.  *See also Aprim v. City of Phoenix*, 2016 WL 6956608, at *3 (Ariz. Ct.

App. Nov. 29, 2016) (A notice of claim is a public record and is not considered outside the pleadings.).

### Count I – Defamation

In his first cause of action, De Silva asserts that the defendant Marsha Kelly committed defamation per se by stating that "Mr. De Silva was very intense, often slapping the table abruptly throughout the interview process" in connection with his application for the Technical Writer, Business Systems Analyst.  Doc. 28, pp. 12-14, 20-21.

"One who publishes a false and defamatory communication concerning a private person is subject to liability if, but only if, [s]he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them."  *Stuart v. City of Scottsdale*, 2022 WL 704121, at *8 (D. Ariz. Mar. 9, 2022) (punctuation modified).  "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation."  *Id*.

"The requirement of a 'false statement' means the statement must have been an assertion of objective fact."  *Lundin v. Discovery Commc'ns Inc*., 352 F. Supp. 3d 949, 960 (D. Ariz. 2018), *aff'd*, 796 F. App'x 942 (9th Cir. 2020) (punctuation modified).  "Further, the statement must be susceptible of being proved true or false."  *Id*.  "Statements involving political invective, opinion, or hyperbole cannot be the basis for a defamation claim."  *Id*. "And even assertions of objective facts that are false are not actionable provided they are substantially true."  *Id*.

"Whether a statement is capable of defamatory meaning is a question of law for the court, but whether the meaning conveyed was defamatory is a question for the jury."  *Dube v. Likins*, 216 Ariz. 406, 419, 167 P.3d 93, 106 (Ct. App. 2007).

The defendants argue first that the defamation claims are barred because De Silva failed to comply with the Notice Statute, A.R.S. § 12-821.01.  Doc. 29, p. 8.  The statute reads in pertinent part as follows:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.

A.R.S. § 12-821.01.

The defendants acknowledge that De Silva "sent a Notice of Claim to Pima County and Defendant Kelly on August 10, 2023." Doc. 29, p. 8. They assert, however, that "Plaintiff's Notice accuses Defendant Kelly of lying but does not make or offer to settle a *defamation* claim." *Id*. (emphasis added). This, they argue, is insufficient. *Id*. The court is not convinced.

The Notice Statute requires the claim to "contain facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed." A.R.S. § 12-821.01. There is no explicit requirement in the Statute that the Notice contain the prospective plaintiff's legal theories. Moreover, the defendants have not cited this court to a case that supports their reading of the Statute. Assuming without deciding that De Silva's notice of claim did not state that he was making an offer to settle a *defamation* claim, the defendants' motion to dismiss will be denied on this issue. *See Mitchell v. City of Flagstaff*, 2012 WL 993436, at *2 (D. Ariz. Mar. 23, 2012) ("There is no requirement that plaintiffs list all legal theories in their notice."); *Watson-Nance v. City of Phoenix*, 2009 WL 792497, at *6 (D. Ariz. Mar. 24, 2009) ("Given the plain text of § 12–821.01(A) and Defendants' failure to cite precedent to the contrary, the Court agrees with Plaintiffs that a notice of claim need not be a prelude to substantive legal briefing and thus need not allege all legal theories later incorporated into the complaint.") (punctuation modified).

The defendants further assert that allegedly defamatory statements are "absolutely privileged when the defendant had a good-faith basis to believe that someone was seriously considering commencing litigation." Doc. 29, p. 8.

When De Silva applied for the position of Technical Writer, Business Systems Analyst, he was interviewed by Javier Baca, Michael Lundin, Scott Miller, and Marsha

Kelly, "who was acting as an Equal Employment Opportunity (EEO) monitor/observer." Second Amended Complaint, Doc. 28, p. 12.  When Kelly informed De Silva that "he was not selected for the position," he "informed . . . Kelly on the phone that he would be pursuing a review of the hiring process."  Doc. 28, p. 13.  De Silva subsequently obtained the administrative review report, which analyzed the hiring process. *Id*.  The report indicates that Kelly told Matt O'Connor, who conducted the administrative review, that "Mr. De Silva was very intense, often slapping the table abruptly throughout the interview process."  Doc. 28, pp. 13-14.  Kelly repeated this statement "in an affidavit submitted to the Arizona Attorney General's Office, Civil Rights Division . . . ."  Doc. 28, p. 14.

"Judges, parties, lawyers, witnesses and jurors are absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which they participate, if the defamatory publication relates to, bears on or is connected with the proceeding." *Goldman v. Sahl*, 248 Ariz. 512, 520, 462 P.3d 1017, 1025 (Ct. App. 2020) (punctuation modified).  "The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Id*.  The privilege applies where the defendant has "a good-faith basis for believing" that someone is "seriously considering filing suit." *Id*. at 521, 1026.  "But the bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Id*.

The defendants maintain that "Defendant Kelly, an EEO monitor, would naturally have a good-faith basis to believe that Plaintiff's allegations of discrimination to PCHR [Pima County Human Resources] would lead to him making those same allegations in this litigation."  Doc. 29, pp. 8-9.  The court is not convinced.

It is certainly possible that Kelly's observation of the hiring process and her observation of De Silva's demeanor, as informed by her experience as an EEO monitor, led her to form a good-faith belief that De Silva was seriously considering filing a lawsuit.  The facts alleged in the Second Amended Complaint, however, are not detailed enough for the

1    court to reach this conclusion as a matter of law. Accordingly, the court will deny the

2    defendants' motion to dismiss on this issue.

3        The defendants assert that "Kelly's statement . . . is merely that Plaintiff was 'very

4    intense, often slapping the table abruptly throughout the interview process.'" Doc. 29, p. 9.

5    This, they argue, does not "reach[] the harm seen in other defamation claims." *Id*.

6    Apparently, the defendants are arguing that Kelly's statement is not capable of a defamatory

7    meaning. The court is not persuaded. Kelly stated that "Mr. De Silva's interview stood out

8    to me because he pounded the table with his fist or open palm as he was answering questions.

9    I had to assume for emphasis, but that along with his intense, adamant behavior created a

10   palpable discomfort." Doc. 28, p. 14. Kelly's statement could be taken as accusing De Silva

11   of pounding the table in an unprofessional and threatening manner. The court concludes that

12   her statement is capable of a defamatory meaning. *See Dube v. Likins*, 216 Ariz. 406, 419,

13   167 P.3d 93, 106 (Ct. App. 2007).

14       The defendants further argue that Kelly's statements that De Silva was "intense and

15   adamant" and that his actions created a "palpable discomfort" are not actionable because they

16   are comments on his demeanor and not his conduct. Doc. 29, p. 9.

17       The court agrees that Kelly's stated opinion that De Silva was "very intense," by itself,

18   could be considered a "mere opinion," which would not be actionable because it is not an

19   assertion of provable fact. *See Turner v. Devlin*, 174 Ariz. 201, 206-208, 848 P.2d 286, 291-

20   294 (1993). Here, however, Kelly's statement that De Silva was "very intense" relies on her

21   alleged observation that De Silva was "often slapping the table abruptly throughout the

22   interview process." Doc. 28, pp. 12-14, 20-21. This is an assertion of provable fact.

23       Finally, the defendants assert that Kelly's opinions of De Silva's demeanor are not

24   actionable because they are "substantially true." Doc. 29, p. 10. They argue that De Silva's

25   performance at the interview truly created a "palpable discomfort" even if Kelly's statement

26   that he pounded on the table was false. The defendants, however, do not point to anything

27   in the Second Amended Complaint that supports their theory that De Silva truly created a

28

"palpable discomfort" by his demeanor alone.  The defendants' motion as it relates to Count I – Defamation should be denied.

Count II - Discrimination

De Silva claims that the Pima County Government discriminated against him due to his race, color, and/or national origin "by denying him promotion opportunities and failing to hire him for positions he [was] qualified for" in violation of the Arizona Civil Rights Act [ACRA], A.R.S. s 41-1463 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. ss 2000e et seq.  Doc. 228, pp. 21-22.  He explains that he is "an Asian American minority individual, having a brown color complexion, with a national origin from Sri Lanka. . . ."  Doc. 28, p. 5.

"ACRA claims are subject to the same analysis as Title VII claims."  *Nessel v. JDM Golf LLC*, 2024 WL 3494378, at *6 (D. Ariz. July 22, 2024).

Procurement Officer

The defendants argue first that De Silva fails to state a claim for discrimination in connection with De Silva's application for the Procurement Officer position.  Doc. 29, pp. 12-13.

De Silva applied for this position on or about January 27, 2023.  Second Amended Complaint, Doc. 28, p. 7.  He previously informed a number of Pima County employees that he intended to do so.  Doc. 28, pp. 7-8.  He was not granted an interview.  *Id*., p. 8.  De Silva asserts that he was qualified to perform the job, but he was not given an interview because the "weights for criteria to select the interviewees had been allocated disproportionately giving [] up to a maximum of [] 60 points for three years of public procurement experience, while only giving a maximum of 20 points to a bachelor's degree or higher.  Doc. 28, p. 8. De Silva has a master's degree but apparently did not have a great deal of public procurement experience.  On the other hand, the ultimately successful "White Caucasian female internal

candidate" did not have "even a bachelor's degree at the time" but apparently had more experience than De Silva.  Doc. 28, pp. 9-10.

There is nothing inherently discriminatory in an employer's preference for experience over education, but De Silva believes that the weights assigned to these criteria were intentionally chosen for a discriminatory purpose.  According to De Silva, in "July 2021, a White Caucasian Male who was as educationally qualified as Plaintiff but with no public procurement service was interviewed and hired as a Procurement Officer."  Doc. 28, p. 9. From this, De Silva concludes that the position can be successfully performed by a person with high educational qualifications but little procurement experience like him.  He therefore asserts that the present shift toward favoring experience over education was not related to the actual requirements of the job but was implemented only to discriminate against him.

De Silva's complaint gives the respondents fair notice of the basis for his claim and provides enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted).  The defendants' motion to dismiss will be denied as it applies to this claim. *See, e.g., Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 514, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002) (Where the plaintiff claimed national origin discrimination pursuant to Title VII and the ADEA and "[h]is complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination," his allegations stated "claims upon which relief could be granted under Title VII and the ADEA.").

The defendants argue that this claim must be dismissed because De Silva fails to make out a prima facie case under the framework established in *McDonnell Douglas*, 411 U.S. 792 (1973).  Specifically, they assert that he fails to establish that "the employer must have treated similarly situated individuals outside of [his] protected class more favorably."  Doc. 29, pp. 12-13.

A "prima facie" case is a convenient tool for evaluating a claim at the summary judgment stage, but as the defendants concede, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss.  Doc. 29, p. 11 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002)); *see also Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) ("[T]he *McDonnell Douglas* burden-shifting analysis . . . primarily applies to summary judgment proceedings . . . .").  De Silva's failure to make out a prima facie case at this stage, assuming without deciding that he has failed to do so, is not dispositive.

The defendants further argue that De Silva's claim is deficient because, while he alleges that he told certain employees that he intended to apply for the position and he alleges that the defendants rigged the qualifications to exclude him, he failed to allege the specific path by which news of his interest in the position reached the ears of the defendants responsible for setting the qualifications.  Doc. 29, p. 13.  The court does not believe that a Complaint need be so detailed to survive a motion to dismiss.  It is enough if the Complaint gives the defendants fair notice of the basis for the claim and enough facts to make that claim plausible.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

Business Intelligence Analyst

The defendants further argue that De Silva fails to state a claim for discrimination in connection with his application for the Business Intelligence Analyst position  Doc. 29, pp. 13-14.

On or about April 6, 2023, De Silva was given a virtual interview for the post of Business Intelligence Analyst – Senior.  Doc. 28, pp. 10-11.  De Silva was the highest scorer at the interview stage, earning 80 points, but he was not hired.  Doc. 28, p. 11.  The successful candidate "was not Asian" and only earned a total of 67 points at the interview

stage.  Doc. 28, p. 11.  De Silva further asserts that his level of education and relevant experience made him more qualified than the successful candidate.  *Id*.

De Silva's complaint gives the respondents fair notice of the basis for his claim and provides enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted).  The defendants' motion to dismiss should be denied as it applies to this claim.

The defendants argue that De Silva has not alleged specifically "what relevant experience he had that the successful candidate did not." Doc. 29, p. 14. He therefore cannot show that he was "similarly situated" to the successful candidate and cannot make out a prima facie case under the framework established in *McDonnell Douglas*, 411 U.S. 792 (1973). Doc. 29, pp. 13-14.  As the court explained above, however, De Silva need not make out a prima facie case at this time.  He need only give the respondents fair notice of his claim and facts sufficient to make the claim plausible,  and he has done that.

Technical Writer

The defendants further argue that De Silva's claim regarding his application for the Technical Writer position should be dismissed.  Doc. 29, pp. 14-15.

On or about May 4, 2023, De Silva was given an in-person interview for the post of Technical Writer, Business Systems Analyst at the Pima County Information Technology Department.  Doc. 28, p. 12.  He was given a virtual second interview on or about May 8, 2023.  *Id*.  He was not selected for the position.  Doc. 28, pp. 12-13.

After the hiring was completed, the defendants conducted an administrative review of the hiring process at De Silva's request.  Doc. 28, p. 13.  De Silva discovered that he had scored the highest after the first interview, but a white Caucasian female was eventually hired "based on the informal second interview."  Doc. 28, p. 13.  The defendant Pima County stated that the successful candidate "was more qualified," but he asserts that was not true.

*Id.*  Both he and the successful candidate had a master's degree, but he had "more experience in IT related work."  Doc. 28, p. 13.  Moreover, the successful candidate only earned 60 points in the Subject Matter Expert (SME) scoring system, "which is a review of qualifications done to shortlist candidates for interviews," while he earned 100 points.   Doc. 28, p. 13.  De Silva further maintains that the administrative review contained suspicious omissions and falsehoods.  *Id.*  The review "omitted key information about Plaintiff's educational and other qualifications such as his MBA and IT experience." *Id.*  It also contained a statement from Marsha Kelly falsely reporting that "Mr. De Silva was very intense, often slapping the table abruptly throughout the interview process."  Doc. 28, p. 14.

De Silva's complaint gives the respondents fair notice of the basis for his claim and provides enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted).  The defendants motion to dismiss will be denied as it applies to this claim.

The defendants argue that De Silva failed to properly explain why he believes that Pima County was being untruthful when it said that the successful candidate was more qualified.  Doc. 29, pp. 14-15.  Not so.  De Silva alleges that he scored 100 points on the "SME" scoring system, while the successful candidate only scored 60 points.  Doc. 28, p. 13. He further alleges that he "was similarly or more qualified with his education up to a master's degree and more experience in IT related work" while the successful candidate "had up to a master's degree only and very little or no IT experience."  Doc. 28, p. 13.  Moreover, he maintains that the administrative review of the hiring process contained suspicious omissions and falsehoods.  *Id.*

Failure to Prevent or Investigate Discrimination

The defendants further argue that the court should dismiss De Silva's claim that Pima County "discriminated against him by failing to have and/or enforce adequate systems,

customs, practices, policies, and procedures that would have prevented the discrimination he alleges." Doc. 29, p. 15 (punctuation modified) (citing Doc. 28, ¶ 122). They argue that Pima County's alleged failures are not an adverse action under Title VII. This court agrees.

In the section of the Complaint referenced by the defendants, De Silva states that

> Defendant PCG [Pima County Government] engaged in unlawful discrimination against Plaintiff due to Plaintiff's race, color, and/or national origin, by failing to have and/or enforce adequate systems, customs, practices, policies, and procedures, to prevent or properly investigate such behavior in the workplace, in violation of the ACRA, A.R.S. § 41-1463, and Title VII.

Doc. 28, p. 22, ¶ 122. This passage appears in that part of the complaint under the heading "Count II – Discrimination." *Id.*; Doc. 28, p. 21. The next part of the complaint is labeled "Count III – Retaliation." Doc. 28, p. 29. It appears that De Silva is claiming that Pima County's failure to properly investigate his claims of discrimination is itself a an actionable instance of intentional discrimination. He is incorrect.

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). This language requires the plaintiff to show that he suffered a difference in treatment that "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354, 144 S. Ct. 967, 974, 218 L. Ed. 2d 322 (2024). He "must show some harm respecting an identifiable term or condition of employment." *Id.* For example, discriminatory "[h]iring, firing, [and] failing to promote . . . are adverse employment actions." *Wozab v. Flextronics Am.*, LLC, 2012 WL 4498232, at *3 (D. Nev. Sept. 28, 2012) (punctuation modified).

It does not appear that the defendant's alleged failure to have and employ an "adequate" system for "properly" investigating complaints of discrimination is, by itself, an adverse employment action. It could be *evidence* that the employer harbors a cavalier attitude toward its duties under Title VII or that it realizes that a discriminatory action has taken place and it wants to hide that fact from scrutiny. But this court does not view it, by itself, to be a stand alone "condition" or "privilege[] of employment," whose absence would trigger a claim under Title VII. 42 U.S.C. § 2000e-2(a). *See, e.g., Chuang v. Univ. of*

*California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) ("[F]ailure of Davis officials to respond to his grievances regarding the misappropriation of his research funds" or their "failure to inform Dr. Chuang of its findings or resulting disciplinary actions" did not "amount to an adverse employment action" because they "did not materially affect the compensation, terms, conditions or privileges of the Chuangs' employment."); *Brown v. Dignity Health*, 2020 WL 3403088, at *7 (D. Ariz. June 19, 2020) ("[T]he Court agrees with Defendant—and Plaintiff cites no authority to the contrary—that an inadequate investigation is not an adverse employment action under Title VII."); *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 170 (E.D.N.Y. 2015) ("Plaintiff cannot show that the failure to investigate Davenport's claim against her affected any of her tangible job benefits, and thus cannot show that this was an adverse action.), *aff'd*, 662 F. App'x 57 (2d Cir. 2016).

De Silva assets that the "failure to prevent discrimination is an adverse action," but he does not identify how that adverse action differs from the underlying adverse action of failing to hire or promote him. Doc. 44, pp. 20-21. He seems to concede that the "failure to prevent unlawful discrimination in hiring, and failure to hire due to unlawful discrimination produce the same harm." Doc. 44, p. 21. The court concludes that if there is no additional harm, then the employer's alleged failure to investigate, or prevent, or remediate does not constitute an averse action for the purposes of asserting a Title VII disparate treatment claim. *See, e.g., Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 640–41 (10th Cir. 2012) ("[A] failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed.").

The motion to dismiss will be granted as it relates to De Silva's claim that the defendants "discriminated against him by failing to have and/or enforce adequate systems, customs, practices, policies, and procedures that would have prevented the discrimination he alleges." Doc. 29, p. 15 (punctuation modified) (citing Doc. 28, ¶ 122).

Count III – Retaliation

1   De Silva claims that his employer retaliated against him in violation of the violation
2   of the Arizona Civil Rights Act, A.R.S. s 41-1463 and Title VII of the Civil Rights Act of
3   1964.  Doc. 28, p. 29.

4       "To state a claim for retaliation under Title VII, a plaintiff must allege that: (1) [he]
5   engaged in a protected activity; (2) [his] employer "subjected [him] to an adverse
6   employment action; and (3) there is a causal link between the protected activity and the
7   adverse action.  *Brown v. Brennan*, 2020 WL 607029, at *3 (N.D. Cal. Feb. 7, 2020)
8   (punctuation modified); *see* Ninth Circuit Jury Instruction 10.8.

9       De Silva asserts that when he complained that he was a victim of discrimination, his
10  employer retaliated against him by denying him "employment opportunities at the County,"
11  creating a hostile environment, denying his request to rescind or amend his resignation date,
12  failing to properly investigate his alleged unlawful discrimination, and publishing defamatory
13  statements about him.  Doc. 28, pp. 30 - 31.

14      De Silva's complaint gives the respondents fair notice of the basis for his claim and
15  provides enough factual allegations "to raise a right to relief above the speculative level . .
16  . on the assumption that all the allegations in the complaint are true even if doubtful in fact."
17  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007) (internal
18  punctuation omitted).  The defendants motion to dismiss will be denied as it applies to this
19  claim.

20      In their motion, the defendants take issue with certain allegations that De Silva uses
21  to support his claim for retaliation.  Doc. 29, pp. 18-20.  They maintain that the employer's
22  customs and policies are not evidence of retaliation because they were implemented before
23  De Silva complained of discrimination in February of 2023.  *Id*.  They assert that De Silva
24  has not alleged the sort of abusive treatment required to establish a hostile work environment.
25  *Id*.  They argue that De Silva has not alleged a link between defendant Spencer's rejection
26  of his request to rescind his resignation on May 9, 2023 and his prior allegations of
27  discrimination.  *Id*.

28

On a motion to dismiss, however, the court determines only whether the Complaint as a whole gives the respondents fair notice of the basis for his claim and provides enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007).  De Silva has done that.  *See also Bernheim v. Litt*, 79 F.3d 318, 326 (2d Cir. 1996) ("[I]n our view, it would be burdensome to have the district court 'prune' a complaint at the pleading stage by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality.").

The defendants further argue that De Silva's allegation that his employer failed to properly investigate his charge of intentional discrimination does not constitute an adverse action. The court does not agree.  Where the plaintiff brings a claim for retaliation pursuant to Title VII, the term "adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000).  An employer's failure to conduct a proper investigation is such an action.  *See U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc*., 2012 WL 12883669, at *6 (D. Haw. Oct. 9, 2012) ("[F]ailure or refusal to investigate a complaint or claim may constitute an adverse employment action if the refusal is in retaliation for earlier protected activity.").

The defendants assert that De Silva fails to allege facts that prove by a preponderance of the evidence that he was retaliated against when the defendant Spencer rejected his request to rescind his resignation citing *Chaboya v. American Nat. Red Cross*, F.Supp.2d 1081, 1092 (D. Ariz. 1999).  Doc. 29, pp. 19-20.  Similarly, they argue that De Silva's claims that his employer failed to properly investigate his unlawful discrimination "do not meet the plausibility standard" previously described.  Doc. 29, p. 20.  The *Chaboya* court, however, analyzed the plaintiff's claims after trial, not at the pleading stage on a motion to dismiss.  This case is distinguishable.

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff need not establish his claims by a preponderance of the evidence.  He need only give the respondents fair notice of the basis for his claim and provide enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007).

Count IV – 42 U.S.C. § 1983.

In Count IV, De Silva claims a cause of action pursuant to 42 U.S.C. § 1983. Specifically, he asserts that the various defendants discriminated against him in violation of 42 U.S.C. § 1981 and the equal protection clause of the Fourteenth Amendment.  Doc. 28, pp. 31-42.  He maintains that the defendant Pima County Government "had systems, customs, practices, policies and procedures in place that perpetuated and allowed for intentional unlawful discrimination and/or retaliation to take place due to Plaintiff's race (Asian), color, and national origin . . . ."  Doc. 28, pp. 31-32.  He further claims that the individual defendants Ana Wilber, Terri Spencer, Scott Loomis, Julie Burch, Javier Baca, Michael Lundin, Scott Miller, Marsha Kelly, Adriana Fuentes, ReCharde Johnson, Thomas Bartkowski, Matt O'Connor, Cathy Bohland, Jan Lesher, Steve Holmes, Francisco Garcia, "intentionally and unlawfully discriminated against Plaintiff due to his race. . . ."  Doc. 28 pp. 32-42..

The defendants argue first that De Silva's Complaint fails to state a proper claim against the Pima County Government.  Doc. 29, pp. 21-22 (citing *Monell v. New York City Dept. Of Social Servs*., 436 U.S. 658 (1978)).

"Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right*." Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).  "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes."  *Id*.

"Section 1983 also imposes liability upon municipalities for constitutional deprivations resulting from actions taken pursuant to government policy or custom." *Id.* (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)).

De Silva claims specifically that the county has a custom and practice of allowing managers to pre-select internal candidates for their open positions based on their own "preferred racial association and likeness." Doc. 28, p. 7. And this policy is supported by the Pima County Merit System Rules, "which limit requests for administrative reviews and reporting of discrimination to only 10 days and does not provide any punitive action for violators." *Id.* Further, there is no oversight of the interview and hiring process. *Id.*

De Silva's complaint gives the respondents fair notice of the basis for his claim and provides enough factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,  127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted). The defendants motion to dismiss should be denied as it applies to this claim.

The defendants note that De Silva "also alleges that Pima County has an EEO plan, utilizes EEO monitors, and has a review and reporting process, all of which entail checks, supervision and accountability," but he "has not alleged why those checks are insufficient." Doc. 29, p. 22. The defendants seem to be arguing that De Silva has not proven by a preponderance of the evidence that this custom or policy really exists and really resulted in his alleged discrimination. This, however, is not the test on a Rule 12(b)(6) motion to dismiss. See above.

The defendants further argue that De Silva's § 1983 claims against the individual defendants should be dismissed because his complaint makes no allegations "that he was intentionally discriminated against." Doc. 29, p. 22. This argument seems to rely on the defendants' previous arguments directed at De Silva's claims for intentional discrimination, which this court has already considered and declines to adopt. See above.

<u>Count V and VII – Negligence and Negligence Per Se</u>

De Silva claims that the defendant Pima County Government and the individual defendants were negligent in failing to "provide its employees an environment free of unlawful discrimination within its premises and/or control." Doc. 28, p. 42. He claims that the defendants were negligent per se by "intentionally and unlawfully discriminating against Plaintiff in violation of the ACRA [Arizona Civil Rights Act], A.R.S. § 41-1463, Title VII, and Plaintiff's rights under Section 1981 and the Fourteenth Amendment." Doc. 28, p. 55.

The defendants argue that De Silva cannot assert a claim for negligence in connection with his employment because "remedies provided to an employee by Arizona law are the exclusive remedies for violation of that statute or the public policy that statute represents" citing A.R.S. § 23-1501(B) of the Employment Protection Act (EPA). Doc. 29, p. 23. The court agrees.

The final section of the EPA reads in its entirety as follows:

> If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute.

A. R. S. § 23-1501 (B).

"In interpreting statutes, we attempt to ascertain and give effect to the legislature's intent." *Taylor v. Graham Cnty. Chamber of Com.*, 201 Ariz. 184, 187–88, 33 P.3d 518, 521–22 (Ct. App. 2001). "We focus first on the statutory wording and, if it is ambiguous or inconclusive, we consider the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose." *Id.* (punctuation modified).

Section B of the Employment Protection Act (EPA) uses the term "the statute" without further elaboration, but this court finds based on the statutory wording that it refers to those statutes that generally describe employee rights such as the Arizona Civil Rights Act (ACRA). *See Chen v. Cozzoli LLC*, 2022 WL 5169236, at *6 (D. Ariz. Oct. 5, 2022) (concluding that the phrase "the statute" in § 23-1501(B) refers to those statutes "that regulate the employee-employer relationship."); *see, e.g., Guernsey v. Elko Wire Rope Inc.*, 2023 WL 5348567, at *4 (D. Ariz. Aug. 21, 2023) (Section 1501(B) applies to "claims

premised on Arizona's Fair Wage Act violations.").  The ACRA provides a remedy to employees who have suffered from employment discrimination.  Accordingly, De Silva's only state remedy for employment discrimination is pursuant to that statute.  His state law negligence claims based on employment discrimination must be dismissed.  *See, e.g., Miles v. Vasquez*, 2007 WL 3307020, at *2–3 (D. Ariz. Nov. 6, 2007) (dismissing the plaintiff's claim that "Defendants had a duty to apply its policies and procedures regarding disciplinary actions and investigations in a fair and consistent manner," in part, because "[w]e decline to broaden negligence law when developed theories are already in place to remedy unlawful personnel actions."); *Miller v. Massi*, 2007 WL 841398, at *5 (D. Ariz. Mar. 16, 2007) (not for publication) ("Title VII provides ample civil liability for those in violation of its statutory scheme. Therefore, we will not infer additional tort liability where none is needed, and grant defendants' motion to dismiss Count Ten [negligence per se].").

De Silva argues to the contrary that the EPA only deals with termination of employment.  Doc. 44, pp. 27-28.  And because he does not allege that he was terminated, the EPA does not apply to this lawsuit.  *Id.*  The court agrees that the majority of the text of the EPA, A.R.S. § 23-1501, deals with employment termination.  Section 23-1501 (A)(3) specifically discusses when "[a]n employee has a claim against an employer for termination of employment . . . ."  Section 23-1501(B), however, does not refer to "termination of employment."  It discusses "violation of a statute" without limitation to termination.  The court agrees with the defendants that if Section 23-1501(A) discusses employment termination in detail, then Section 23-1501(B) must apply to something else, and that would be adverse employment actions besides termination.  The court concludes, based on the wording of the entire statute, that Section 23-1501(B) applies to all statutory employment rights violations including discriminatory failure to hire.

De Silva notes that in *Taylor v. Graham County Chamber of Commerce* the Arizona Court of Appeals stated that "the EPA . . . addresses claims for termination of employment but not other wrongful employment acts or omissions."  Doc. 44, pp. 27-28;  *Taylor v. Graham Cnty. Chamber of Com.*, 201 Ariz. 184, 187, 33 P.3d 518, 521 (Ct. App. 2001). The

*Taylor* court, however, was discussing a previous version of the EPA before Section 23-1501(B) was added in 2012.  *See* Ariz. Rev. Stat. Ann. § 23-1501, Amended by Laws 2012, Ch. 321, § 30, eff. Sept. 29, 2012.  Section 23-1501(B) is the section that applies to discriminatory failure to hire.

De Silva further argues that the term "the statute" must refer to wrongful terminations and if the legislature wanted to refer to other employment rights, it would have used the term "a statute." Doc. 44, p. 28.  De Silva maintains that the word "the" is "a definite article used in reference to a particular thing." *Id*.  The court is not convinced.  The term "the statute" does refer to a particular thing – a statute that governs the employee-employer relationship.

De Silva notes that the defendants have not cited to a case directly on point holding that the EPA precludes negligence claims based on a violation of the ACRA or other employment rights statutes where the plaintiff claims discrimination in the hiring process, and not termination.  He argues that "they are asking this Court to take the extraordinary step of broadening the scope and enforcement of the EPA beyond its language or legislative intent." Doc. 44, p. 29.

The court agrees that no Arizona case appears to be directly on point.  Nevertheless, the court finds that the case law interpreting the EPA is sufficiently clear to direct the court to a reasoned conclusion.  The court further notes that the EPA was designed to limit the remedies available to an aggrieved employee, so this court's conclusion, that De Silva is limited to statutory remedies for his allegations of employment discrimination, is not entirely at odds with the intent of the legislature.

De Silva also argues that the ACRA and Title VII are designed to "supplement, rather than supplant, existing laws . . . ." Doc. 44, p. 29.  That might be so, but their intent to supplement does not restrict the authority of Arizona legislature from passing additional legislation that supplants existing common law remedies.

De Silva notes that the EPA does not restrict common law actions such as Intentional Infliction of Emotional Distress, and he concludes that common law actions such as negligence should not be different.  Doc. 44, pp. 29-30.  The court does not agree.

In *Cronin v. Sheldon*, the Arizona Supreme Court held that the EPA does not "preclude wrongfully terminated employees from pursuing collateral common law tort claims related to discharge from employment, including intentional infliction of emotional distress . . . negligent infliction of emotional distress . . . interference with contractual relations . . . or defamation . . . ." *Cronin v. Sheldon*, 195 Ariz. 531, 541, 991 P.2d 231, 241 (1999). Nevertheless, the *Cronin* court did find that the EPA precluded an action for "tortious wrongful discharge." *Id*. This court concludes that while the EPA does not preclude all common law tort claims, it does preclude common law tort claims for employment discrimination where there exists a statute that provides a remedy for that discrimination.

De Silva argues that the EPA violates "Article 2, section 31 of the Arizona Constitution which states that "no law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person." Doc. 44, p. 30. This provision, however, only restricts laws regulating "the amount of damages to be recovered." *Cronin v. Sheldon*, 195 Ariz. 531, 540, 991 P.2d 231, 240 (1999). It does not restrict the authority of the legislature to pass a law, such as the EPA, that regulates a "right of action." *Id*.

De Silva maintains that the defendants' interpretation of the EPA violates the Anti-abrogation Clause of the Arizona Constitution, Article 18, § 6, which prohibits the abrogation of certain causes of action. The court does not agree. "The anti-abrogation clause provides that "the right of action to recover damages for injuries shall never be abrogated . . . ." Torres v. JAI Dining Servs. (Phoenix), Inc., 256 Ariz. 212, 536 P.3d 790, 803 (2023) (punctuation modified). The Clause, however, "applies only to tort causes of action that either existed at common law or evolved from rights recognized at common law." *Cronin v. Sheldon*, 195 Ariz. 531, 539, 991 P.2d 231, 239 (1999). "The common law [however] gave no protection to employees or others against discrimination based on race, age, or gender and recognized no such right." *Id*. Accordingly, a statute that restricts an employee's right to bring a negligence action arising out of an act of employment discrimination does not violate the Anti-abrogation Clause. *Id.*; *see also Mack v. McDonnell Douglas Helicopter*

*Co.*, 179 Ariz. 627, 631, 880 P.2d 1173, 1177 (Ct. App. 1994) ("[A]n at-will employee may not use negligence or other tort claims to gain rights not granted by an employment contract.").

De Silva asserts that a causes of action against a governmental entity must be protected by the Anti-abrogation Clause because causes of action against governmental entities were permitted at the time of Arizona statehood. Doc. 44, pp. 30-31. The Anti-abrogation Clause, however, applies to specific causes of action, not causes of action asserted against particular defendants.

Finally, De Silva argues that the EPA violates the Fourteenth Amendment because it "prevent[s] or limit[s] remedies to Plaintiff." Doc. 44, p. 31. He quotes that Amendment for the proposition that "no State shall make or enforce any law which shall abridge the *privileges* or immunities of citizens of the United States." Doc. 44, p. 31 (emphasis in original). He further explains that Section 1983 provides that persons who act under color of State law "shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress." Doc. 44, p. 32. Apparently, De Silva is arguing that the EPA improperly abridges his ability to use Section 1983 to redress his claims because redress of claims is one of the "privileges or immunities of citizens of the United States." *Id*. He is mistaken.

A general right to bring an action for "redress of claims," does not qualify as one of the "privileges or immunities of citizens of the United States." Doc. 44, p. 31. The Privileges or Immunities Clause of the Fourteenth Amendment "only secures those rights which own their existence to the Federal government, its National character, its Constitution, or its laws." *Merrifield v. Lockyer*, 547 F.3d 978, 983 (9th Cir. 2008) (punctuation modified). "Some examples of Federal privileges or immunities protected by the Fourteenth Amendment listed by the Supreme Court were the right to petition the Federal government and to demand the care and protection of the Federal government over his life, liberty, and property when on the high seas." *Id*. A general right to redress grievances or the specific right to a workplace free from discrimination does not fall within the Privileges or Immunities Clause.

1

2          IT IS ORDERED that the defendants' partial motion to dismiss pursuant to

3   Fed.R.Civ.P. 12(b)(6), filed on June 26, 2024, is Granted in Part.  Doc. 29.

4          The motion will be granted as it relates to De Silva's claim that the defendants

5   "discriminated against him by failing to have and/or enforce adequate systems, customs,

6   practices, policies, and procedures that would have prevented the discrimination he alleges."

7   Doc. 29, p. 15 (punctuation modified) (citing Doc. 28, ¶ 122).

8          The motion will be granted as it relates to De Silva's claims for negligence and

9   negligence per se.

10         DATED this 12th day of November, 2024.

11

12

13

14

15

16   _____

17   Honorable Michael A. Ambri
     United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28