**LAURA CONOVER**
**PIMA COUNTY ATTORNEY**
**CIVIL DIVISION**
Yvette Patterson, SBN 024101
Harris Rubin, SBN 036329
Deputy County Attorneys
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Telephone: 520-724-5700
Yvette.Patterson@pcao.pima.gov
Harris.Rubin@pcao.pima.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nirosh De Silva,<br><br>              Plaintiff,<br>vs.<br><br>Pima County Government; et al.,<br><br>              Defendants. | Case No. 4:24-cv-00200-MAA<br><br>**PIMA COUNTY'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

1. Plaintiff was hired as a Buyer Senior with the Pima County Procurement Department ("PCPD") on February 28, 2022. [ND000172].

2. Plaintiff was hired by Defendant Spencer on the recommendation of Defendant Wilber. [PC005939-005944].

3. Plaintiff worked under Defendant Wilber in the Materials and Services ("M&S") Division of PCPD. [ND000256].

4. Plaintiff applied for a promotion to Buyer Principal on April 22, 2022. [ND000167].

5. Plaintiff was interviewed for this position on May 19, 2022. [Pl.'s 2d Am. Compl., ¶

24].

6. A different PCPD employee, Lorraine Gonzales, was ultimately chosen for the position. [ND000257].

7. Ms. Gonzalez had been working for PCPD since September 4, 2005, was promoted to Buyer Senior in the M&S Division on February 21, 2016, and transferred to the Design and Construction (D&C) Division on October 15, 2018. [ND000175-000181; ND000224].

8. Ms. Gonzalez was chosen for promotion based on her longer experience working as a Buyer Senior in the M&S Division, ability to interact well with coworkers, interviews, and written examination scores. [ND000224; ND000257; PC005939-005944].

9. PCPD began preparations to recruit a Procurement Officer On January 18, 2023, after receiving written notice that the most experienced Procurement Officer in the D&C Division was retiring. [ND000248-000249; PC005939-005944].

10. Defendants Spencer and Loomis decided on preferred qualifications for the Procurement Officer position on the same day. [ND000248-000249].

11. Pima County policy requires Departments seeking to recruit a new employee to provide a position description and preferred qualifications to County Human Resources ("HR"). Unlike minimum qualifications, preferred qualifications change based on the needs of the Department. [ND000260-000261; PC005978-005985].

12. After advertising the recruitment, HR will post the position for at least five business days, then respond to the hiring Department with the number of applicants who met the minimum qualifications for the position, but not the names of the applicants. [ND000260-000261; PC005939-005944; PC005978-005985].

13. The hiring Department then decides whether to hold a Subject Matter Expertise ("SME") evaluation in order to remove applicants with less relevant qualifications

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1 from the applicant pool. [ND000260-000261; PC005978-005985].

2,3,4 14. If so, the Hiring Manager for the recruitment will allocate a total of one hundred points between the preferred qualifications. [ND000260-000261; PC005978-005985].

5,6,7 15. HR will then review point allocations to ensure that they fit the position and prepare an SME sheet which lists the name of each applicant and the point values for each preferred qualification. [ND000260-000261; PC005978-005985].

8,9 16. HR will then transmit this SME sheet and the applications to the hiring Department. [ND000260-000261; PC005978-005985].

10,11,12 17. The Hiring Manager will then assign a point value to each qualification based on the applications and set a minimum value for applicants to interview. [ND000260-000261; PC005978-005985].

13,14 18. Defendant Loomis decided that an SME would be appropriate for the Procurement Officer recruitment. [PC005939-005944; PC005986-005990].

15,16,17 19. Defendant Loomis determined how each preferred qualification would be weighted before he was aware of the identities of the applicants. [PC005939-005944; PC005986-005990].

18,19,20 20. Defendant Loomis assigned 60 points out of a total of one hundred to the preferred qualification asking for three years of public procurement experience. [PC005939-005944; PC005986-005990].

21,22,23,24,25,26 21. Defendant Loomis made this decision because he needed to replace his most experienced Procurement Officer, his remaining staff lacked experience, and his Division was experiencing a heavy workload. This meant it was necessary to hire a new Procurement Officer who was already familiar with public procurement processes and could contribute immediately without training. [PC005939-005944; PC005986-005990.

22. At the time Defendant Loomis set the weights for the SME, neither he nor Defendant Spencer were aware that Plaintiff was interested in the Procurement Officer position. [PC005939-005944; PC005986-005990].

23. Plaintiff did not meet the minimum score on the SME to be interviewed. [Pl.'s 2d. Am. Compl., ¶ 38; PC005986-005990].

24. Plaintiff informed his supervisor, Defendant Wilber, that he had applied for the position. Following his rejection, he alleged to her that he had been discriminated against, and that the SME weighting was rigged to ensure that another PCPD employee, Judy Cooper, was the only applicant with sufficient experience to interview. [ND000258].

25. Defendant Wilber brought this information to Defendant Spencer, who then brought it to Defendant Loomis. [ND000258].

26. The three held a meeting with Plaintiff on February 28, 2023, to discuss his concerns. This meeting was not intended as a threat. [ND000258; PC005939-5944, PC005986-005990].

27. During this meeting, Defendant Loomis discussed the methodology he used to shortlist applicants and how Plaintiff could better document his qualifications on applications. [ND000258; PC005939-005944; PC005986-005990].

28. Plaintiff sent a letter of resignation to Defendant Wilber on April 13, 2023. It set his resignation date on May 10, 2023. [ND000226, ND000250, ND000251].

29. Following Plaintiff's decision to resign, Defendant Spencer determined that the M&S and D&C Divisions would soon have an increased workload owing to Pima County's move from ADP to Workday as its enterprise resource planning system. [PC005939-005944; PC005986-005990].

30. To accommodate this increased workload, Defendant Spencer sought permission to reclassify Plaintiff's position from a Buyer Senior to a Procurement Officer once it

1     was vacant. [PC005939-005944; PC005986-005990].

2 31. On May 9, 2023, Plaintiff emailed Defendant Wilber asking to have his date of resignation pushed back from May 10 to May 19, 2023, and to take vacation during this period. [PC005939-005944; PC005986-005990].

32. Accepting Plaintiff's request would have delayed reclassifying the position. [PC005939-005944; PC005986-005990].

33. Defendant Spencer denied Plaintiff's request because she did not see any benefit which would outweigh that delay. [PC005939-005944; PC005986-005990].

34. In response to this, Plaintiff requested reconsideration and told Defendant Spencer that he had opened an administrative review of another Pima County position which he believed would likely become an EEOC complaint, and that any adverse actions against him could be construed as discriminatory and subject to review and investigation. [PC005974-005977].

35. On March 14, 2023, Plaintiff contacted Defendant Baca to discuss opportunities in the Pima County Information Technology Department ("IT"). [ND000209-000210].

36. The two discussed both in person and electronically. Defendant Baca encouraged Plaintiff to apply for positions in IT and supported Plaintiff in doing so. [ND000093-000094, ND000209-000210, ND000264; PC005949-005952].

37. Plaintiff applied for a position as a Business Systems Analyst – Technical Writer ("Technical Writer") in IT on March 31, 2023. [ND000201].

38. The Technical Writer position held specific duties focused on communications related to technical processes, such as generating instruction manuals, written guidance, and other educational materials aimed at employees without technical expertise. [ND000205-000206, ND000264, ND000267, ND000271].

39. Plaintiff interviewed for the Technical Writer position on May 4, 2023.

[ND000203].

40. Plaintiff was invited to interview for a second time on May 8, 2023. [ND000212].

41. IT hired another Pima County employee, Sheri Prochaska, over Plaintiff. [ND000201-000206].

42. Ms. Prochaska had significant experience in the skills most important to the Technical Writer explanation, including a master's in organizational communications, prior experience teaching communications, writing the manual for Pima County's Tax Assembly system, providing phone support teaching county residents to navigate their tax bills online, and familiarity with multiple applicable technologies. [ND000080-000084, ND000201-000206, ND000264-000272; PC000818-000824].

43. Ms. Prochaska also presented a positive personality and an interest in the goals of the Technical Writer position. [ND000080-000084, ND000201-000206, ND000264-000272].

44. Plaintiff had some communications-related experience but little of it involved creating formal documentation. [ND000080-000084, ND000167-000173, ND000201-000206, ND000264-000272].

45. Plaintiff indicated that his interest in the Technical Writer position was as a way of entering the IT field. [ND000080-000084, ND000167-000173, ND000201-000206, ND000264-000272].

46. Plaintiff also attended an interview for a position as a Business Systems Analyst – Senior on May 10, 2023. [ND000277].

47. Defendant Kelly, as well as interviewers Jack Lloyd and David Fincher recall that Plaintiff also hit the table during an emotional outburst in that interview. [ND000277, PC005945-005946; PC005947-005948].

48. Plaintiff interviewed for a position as a Business Intelligence Analyst Senior with

1    the Pima County Health Department ("PCHD") on April 6, 2023. [PC005964-005966].

49. One other applicant, Radha Maharana, was also invited to interview, but cancelled. [PC000965].

50. Amanda Sapp led the interview process, although Defendant Johnson also participated. [PC005964-005966].

51. Both interviewers gave Plaintiff a score of 40 out of 60 for his interview. [PC005964-005966].

52. Ms. Sapp made the decision not to hire Plaintiff, partially because he had requested to telecommute for the majority of the week. [PC005964-005966].

53. As Plaintiff was the only interviewee, PCHD reopened the position for further applicants. [PC005964-005966].

54. Ms. Sapp took time off after this and asked Dr. Amanda Lam to sit on a second interview panel in her absence. [PC005964-005966].

55. Defendant Johnson led this second interview process. [PC005964-005966].

56. Following this second interview, PCHD hired Ryscha Williams-Campbell. [PC005964-005966].

57. Defendant Johnson had given Ms. Campbell a score of 50 for her interview, and Dr. Lam had given her a score of 17. [PC005964-005966].

58. Dr. Lam had not previously sat on an interview panel for Pima County. [PC005964-005966].

59. Dr. Lam's scores were significantly lower than Defendant Johnson's and did not account for some qualifications that should have justified higher scores. [PC000861-000874, PC000875-000884].

60. Following discussion between Defendant Johnson and Dr. Lam, both agreed that Ms. Campbell would be the best fit for the position. [PC005964-005966].

61. Defendant Johnson would have hired Ms. Campbell had she and Plaintiff interviewed in the same interview session. [PC005964-005966].

62. Plaintiff filed a complaint with HR regarding the Technical Writer recruitment on May 10, 2023, and stated that he "intend[ed] to file an EEO complaint" as well. [PC000394-000396].

63. Plaintiff alleged that he was asked questions which were intended to exclude him from consideration during the second interview for the Technical Writer position. [PC000289-000292].

64. Defendant Cathy Bohland instructed HR to investigate this complaint by requesting documents from IT, reviewing them for any irregularities, interview relevant parties, and make sure that IT had followed policy and made decisions based on valid business reasons. [PC000289-000292].

65. Plaintiff followed up on his request with calls and emails to Defendant O'Connor, who was investigating his complaints. [PC000067-000070].

66. Plaintiff included complaints about the Procurement Officer position and Defendant Spencer's refusal to amend his resignation date in these communications. [PC000067-000070].

67. Defendant O'Connor did not investigate the Procurement Officer recruitment as the Pima County Merit System rules only authorized applicants to request administrative review of recruitments for ten days. [PC000067-000070].

68. As part of the investigation of this claim, Defendant Kelly stated that she recalled Plaintiff being "very intense, often slapping the table abruptly throughout the interview process." [ND000204].

69. Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office and Equal Employment Opportunity Committee around July 20, 2023. [Pl.'s 2d. Am. Compl., ¶ 103].

70. As part of Pima County's response to this charge, Defendant Kelly provided a sworn affidavit in which she repeated her statement that Plaintiff hit a table to emphasize his statements during the May 4, 2023, interview for the Technical Writer position and again during the May 10 interview for the Business Systems Analyst – Senior position. [ND000273-000278].

71. In March and April 2024, the Arizona Attorney General and the EEOC sent Plaintiff notices granting him the right to sue without their involvement. [Pl.'s 2d. Am. Compl., ¶¶ 104-105].

72. Plaintiff's work experience prior to his hire by Pima County was primarily as a manager or owner of small, now-defunct travel companies. [ND000167-000173].

73. Plaintiff has stated that all of his disparate treatment claims are based on circumstantial evidence which conforms to the *McDonnell Douglas* framework. [PC005953-005963].

74. Plaintiff has stated that Pima County's explanation that it hired Lorraine Gonzales for the Buyer Principal position based on her greater experience is pretextual because it "is antithetical to a competitive hiring process as external candidates would have been excluded from being hired," that he was given more work following the interview, and that "early in 2023, Plaintiff was tasked to work as a buyer for four procurement officers while Gonzales was tasked to work with two."

75. Plaintiff has stated that it is "certainly plausible" that Defendant Loomis could have been informed of Plaintiff's intent to apply for the Procurement Officer position by one or more of Defendant Wilber, current PCPD employees Stephen Romero and Maria Canizales, or former PCPD employees Monica Dennis and Nancy Page. [PC005953-005963].

76. Defendant Loomis denies that any of the above-named individuals informed him that Plaintiff intend to apply for the Procurement Officer position or that he was

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

informed by any other method. [PC005986-005990].

77. Plaintiff has not disclosed any of the above-named individuals as witnesses and can no longer do so. [PC005967-005971; PC005972-005973; Doc. 83].

78. Plaintiff further claims to that there was a rumor that Defendants Spencer and Loomis "had coordinated to fill the potentially vacant position of a retiring Procurement Officer with Judy Cooper," and that they transferred another employee ahead of time to in preparation for her to take over Ms. Cooper's role. [PC005953-005963].

79. Plaintiff has stated that the evidence that the Procurement Officer SME was discriminatory is that, prior to 2023, two "similarly situated individuals outside of Plaintiff's protected class, who had less, or no public procurement experience were given an interview and even hired." [PC005953-005963].

80. Plaintiff has stated that the evidence that Defendant Johnson chose to hire Ryscha Williams-Campbell for discriminatory reasons is that Plaintiff scored higher on the interview, Plaintiff and Ms. Campbell had "similar higher education qualifications" and because both Defendant Johnson and Ms. Campbell are black.

81. Plaintiff has stated that one Pima County policy he believes discriminates against his protected class is that Pima County Merit Rules "allowed only 10 days to file an employment/hiring complaint. This allowed violators a generously short window of accountability which was confirmed by Defendant Bohland's refusal to investigate an allegation of unlawful discrimination. There was clearly no mention of any punitive action for violators in this policy as well." [PC005953-005963].

82. Pima County's Merit System Rules limit requests for Administrative Reviews of hiring processes to 10 business days in order to ensure that problems can be fixed before a new employee starts work. This is meant to respond to technical or administrative errors in the process. [PC005978-005985].

83. Pima County does not have a 10-day limit on investigations of discrimination. [PC005978-005985].

84. Plaintiff's request for investigation of the Procurement Officer hiring process was based on the SME point values, which Defendant Loomis had set before he was given the identities of the applicants. [PC000067-000070, PC005978-005985].

85. HR rejected Plaintiff's request for investigation of the Procurement Officer hiring process because it was premised on Defendant Loomis having discriminated against Plaintiff before Defendant Loomis was aware that Plaintiff had applied for the Procurement Officer position. [PC005978-005985].

86. Plaintiff has stated that another Pima County policy he believes discriminates against his protected class is that "The Pima County Human Resources policy of not overseeing hiring, Subject Matter Expert ("SME") scoring, and assignment of scoring weights or seeking justification from hiring managers on hiring decisions, show a lack of any enforcement or supervision and provides no negative consequences to violators of discrimination laws." [PC005953-005963].

87. Plaintiff has stated that another Pima County policy he believes discriminates against his protected class is that "The Pima County Human Resources Department had a policy of no supervision and intervention, and this encouraged bad actors to freely discriminate against Plaintiff and other protected class of individuals." [PC005953-005963].

88. Plaintiff did not identify any policies he believes discriminates against his protected class other than the above three. [PC005953-005963].

89. Plaintiff has stated that one act he believes was retaliation against him for making complaints of discrimination or contributed to a hostile work environment was the March 1, 2023, meeting discussing the SME process for the Procurement Officer position. He believes this act was retaliatory and created a hostile work environment

1   because he was brought into it on a few minutes' notice, and that he had not yet
2   received notice that his probation period was completed. [PC005953-005963].

3   90. Plaintiff has stated that another act he believes was retaliation against him for
4   making complaints of discrimination or contributed to a hostile work environment
5   was Defendants Spencer and Wilber not passing his complaints of discrimination
6   on to HR. [PC005953-005963].

7   91. Plaintiff has stated that another act he believes was retaliation against him for
8   making complaints of discrimination or contributed to a hostile work environment
9   was Defendant Spencer rejecting his request to push back his resignation date.
10   [PC005953-005963].

11   92. Plaintiff has stated that another act he believes was retaliation against him for
12   making complaints of discrimination or contributed to a hostile work environment
13   was Defendant Kelly's statements that he hit the table during the May 4, 2023,
14   interview for the Technical Writer position. [PC005953-005963].

15   93. Plaintiff has stated that another act he believes was retaliation against him for
16   making complaints of discrimination or contributed to a hostile work environment
17   was Defendant Bohland rejecting his requests for investigation of his complaints of
18   discrimination other than for the Technical Writer position. [PC005953-005963].

19   94. Plaintiff lists no other acts he believes were retaliation against him for making
20   complaints of discrimination or contributed to a hostile work environment.
21   [PC005953-005963].

22   95. Plaintiff has alleged that Defendant Wilber described being discriminated against
23   by her supervisors and that "an atmosphere existed in Pima County for those who
24   raise issues," which he further states "were taken as implied threats of retaliation in
25   order to dissuade Plaintiff from pursuing his grievances." [PC005949-005952].

26   96. Plaintiff has stated that the March 31 meeting "was a verbal form of retaliation or

1  threat" and that "Defendant Spencer delaying or holding a completion of probation letter, until after a meeting where Plaintiff is asked to accept the management's stance or explanation on the grievance, was construed as a verbally implied threat of retaliation. [PC005949-005952].

97. Plaintiff has alleged no other verbal or written threats of retaliation. [PC005949-005952].

98. Plaintiff has stated that the HR investigation was untimely because it was completed on May 24, 2023, which is after what he understands to be a 10-day deadline beginning when he made his complaint on May 10, 2023. [PC005953-005963].

99. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because the "Administrative Review failed to note and correctly compare Plaintiff's qualifications against the candidate that was hired. In the Selection section, while the hired candidate's education and other experience was meticulously detailed, Plaintiff was merely compared as one having "experience writing a few Procurement procedures" and "led a project to upgrade an online platform for reservations and training call center staff." [PC005953-005963].

100. Plaintiff does not allege that he has any qualifications which do not fit under these two descriptions. [PC005953-005963].

101. Plaintiff's resume mostly consists of generic, non-descriptive statements which do not indicate that he has any qualifications which do not fit under these two descriptions. [PC000775-000780].

102. Contemporary notes and later declarations by the members of the Technical Writer interview panels indicate that Ms. Prochaska "elaborated on her experience" and "was able to tell [IT] what she had done previously her whereas Plaintiff only described writing "a few procedures," "did not communicate any relative experience in directly helping end-users," and could only "tell us what he would do in a

scenario." [ND000080-000084, ND000264-000272].

103. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because the "investigation failed to highlight that the second interview was not scored and also that the SME scoring showed that Plaintiff was the most qualified candidate with a score of 100 points." [PC005953-005963].

104. The Administrative Review includes both a prominent list of the applicants' SME scores and a section explaining that the second interviews "were an informal process" which directly states that the questions were not scored. [ND000201-000206].

105. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because "Defendant O'Connor incorrectly and falsely asserts that the call center staff were not the end users of the software who received Plaintiff's training." [PC005953-005963].

106. Plaintiff did not previously indicate what the above-mentioned software is or that the call center staff were the end users of the software, rather than employed for the purpose of helping the end users of the software. [ND000201-000206, PC005953-005963].

107. Notes made by interview panel members indicate that that Plaintiff "explained features to agents specifically related to how to answer customer questions," that the "call center would handle issues," and that Plaintiff would "teach staff to answer customer questions" and "communicate to customers." [ND000080-000084].

108. Plaintiff believes his above claims entail a failure to include his experience in "explaining new or updated technology to an end-user; Developing instructions on the use of technology by an end-user; Developing and maintaining Knowledge Articles in a Knowledge Base; Developing and delivering a campaign to educate users on new or updated technology." [PC005953-005963].

109. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because "Defendant O'Connor weighed the statements of Defendant Kelly as if she was a panelist in the interview" by including her statements that Ms. Prochaska "had more experience and was a better fit," "was a teacher, well spoken, qualified, and experience[d]," which Plaintiff believes indicate that Defendant Kelly was "anything but an un-biased participant." [PC005953-005963].

110. Defendant Kelly has noted that she "observe[d] the candidates' demeanor during their interviews" and Ms. Prochaska "really [stood] out" even as an observer. [ND000275-000276].

111. Plaintiff further states that Defendant Kelly's "false and defamatory, and uncorroborated" statement about Plaintiff "slapping the table abruptly throughout the interview process" is "evidence of her discriminatory intent and retaliation."

112. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because it included statements from Defendant Miller that his preference was to see Ms. Prochaska "standing in front of a group and presenting" and disliked his impression of Plaintiff as "as someone wanting to get into IT, to move up." Plaintiff believes these statements were made with "discriminatory intent showing preference to one racial group and objection to someone like Plaintiff moving up the ranks." [PC005953-005963].

113. Plaintiff does not provide a reason why the above statements would be connected to race. [PC005953-005963].

114. Defendant Miller's full statement as included in the investigation is that "Sheri was a very positive and eager person interested in the work. You can see her standing in front of a group and presenting," which he contrasted with Plaintiff having "no enthusiasm for the work." [ND000201-000206].

115. Defendant Miller further stated that "[i]t was very easy to imagine Sheri Prochaska standing in a room full of end-users and presenting non-technical information about technology in a way employees could enjoy."

116. The other Defendants present at the interview also noted that Ms. Prochaska's behavior or demeanor was more pleasant and generally conducive to teaching than Plaintiff's. [ND000267-000278].

117. Plaintiff has stated that the HR investigation was flawed, incomplete, or uncomprehensive because Pima County did not provide recordings of the statements quoted in the investigation, which he believes "indicates a disconnect between the statements made in the report and Defendant O'Connor's conclusions," implies that Defendant O'Connor is hiding recordings or making speculative assumptions without sources, and "shows that the Administrative Review has been loosely created to support Pima County's position and to avoid holding any of its employees accountable." [PC005953-005963].

118. HR policy at the time was to allow investigators to choose whether or not to record interviews, as some investigators felt that interviewees are less candid when they are recorded. [PC005978-005985]

119. Plaintiff does not provide what the above-mentioned disconnect is or how the lack of recordings is meant to avoid holding employees accountable. [PC005953-005963].

DATED October 17, 2025.

                                      LAURA CONOVER
                                      PIMA COUNTY ATTORNEY

By:  /s/ *Harris Rubin*
       Harris Rubin
       Yvette Patterson
       Deputy County Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and a copy of foregoing was e-mailed on October 17, 2025, to:

Nirosh H. De Silva
7739 E. Broadway Blvd. PMB 111
Tucson, AZ 85710
Niroshdes@gmail.com
*Plaintiff*

By: *Deimos Thorne*

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION